MORGAN, LEWIS & BOCKIUS LLP
CARRIE A. GONELL (State Bar No. 257163)
SAMUEL S. SADEGHI (State Bar No. 311785)
MAYRA NEGRETE (State Bar No. 333491)
600 Anton Boulevard, Suite 1800
Costa Mesa, CA  92626-7653
Tel:     +1.714.830.0600
Fax:    +1.714.830.0700
carrie.gonell@morganlewis.com
sam.sadeghi@morganlewis.com
mayra.negrete@morganlewis.com

Attorneys for Defendants
ROOFLINE, INC., SRS DISTRIBUTION INC., J.B. WHOLESALE ROOFING AND BUILDING SUPPLIES, INC., BUILDERS SUPPLY LOGISTICS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS JIMENEZ and JUAN PINZON, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROOFLINE, INC. dba ROOFLINE SUPPLY & DELIVERY, an Oregon corporation; SRS DISTRIBUTION INC., a Delaware corporation; J.B. WHOLESALE ROOFING AND BUILDING SUPPLIES, INC., a California Corporation; BUILDERS SUPPLY LOGISTICS, INC., a Delaware corporation; and DOES 1 THROUGH 10, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>28 U.S.C. §§ 1332(a), 1441 and 1446 |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, Defendants Roofline, Inc. ("Roofline"), SRS Distribution Inc. ("SRS"), J.B. Wholesale Roofing and Building Supplies, Inc. ("J.B."), and Builders Supply Logistics, Inc. ("BSL"),[1] (collectively "Defendants"), remove the above-entitled action from the Superior Court of California in and for the County of Sacramento to the United States District Court for the Eastern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million.

Removal is based on the following grounds:

## I.   PLEADINGS, PROCESS, AND ORDERS

1. On January 23, 2023, Plaintiffs Carlos Jimenez and Juan Pinzon ("Plaintiffs") filed an unverified Complaint in the Sacramento County Superior Court, entitled *Carlos Jimenez and Juan Pinzon, individually, and on behalf of other members of the general public similarly situated v. Roofline Inc. et al.*, Case No. 34-2023-00333516-CU-OE-GDS ("Complaint").

2. The Complaint alleges causes of action for (1) failure to pay overtime; (2) failure to pay minimum wages; (3) failure to provide meal breaks or pay premiums; (4) failure to provide rest breaks or pay premiums; (5) failure to provide recovery periods; (6) failure to provide accurate wage statements and maintain payroll records; (7) failure to timely pay wages upon separation; (8) failure to timely pay wages during employment; (9) unreimbursed business expenses; (10) unlawful business practices; and (11) unfair business practices. The Complaint names Roofline, Inc., SRS Distribution Inc., J.B. Wholesale Roofing and Building Supplies, Inc., and Builders Supply Logistics, Inc. as Defendants.

3. Plaintiffs served the Complaint on Defendant BSL on January 31, 2023 and Defendant Roofline on February 6, 2023. Defendants SRS and J.B. have not been served. True

---

[1] Plaintiffs erroneously assert that "Defendants" were Plaintiffs' employer. Plaintiffs were employed solely by Defendant Roofline Inc.

and correct copies of the Summons, Complaint, and all documents served with the Complaint are attached as **Exhibit A**.

4. Plaintiffs seek to represent the following class and/or subclasses:

- Class: "All all persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from June 29, 2021, until the date of trial."
- Subclass: "All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial."

*See* Ex. A, Compl. ("Compl.") ¶¶ 44-45.

5. On March 2, 2023, Defendants filed and served their Answer to the Complaint in Sacramento County Superior Court. A true and correct copy of the Answer is attached as **Exhibit B**.

6. On February 9, 2023, Plaintiffs filed a Notice of Order Re Complex Case Determination. A true and correct copy of the Notice of Order Re Complex Case Determination is attached as **Exhibit C**.

7. **Exhibits A through C** constitute all the pleadings, process, and orders served upon or by Defendants, or filed to Defendants' knowledge to date, in the Superior Court action.

II. **THE REMOVAL IS TIMELY.**

8. This Notice of Removal is timely filed, pursuant to 28 U.S.C. 1446(b), because it is filed and served within thirty days of Defendants' receipt of Plaintiffs' Complaint. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."). Plaintiffs served their Complaint on Defendant BSL on January 31, 2023.

9. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

### III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

10. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

11. This action is brought by Plaintiffs as a putative class action on behalf of a proposed class of more than 100 individuals. As such, this matter is a "purported class action" as that term is defined pursuant to CAFA.

12. The Complaint could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter is brought as a class action under California Code of Civil Procedure § 382, diversity of citizenship exists between one or more members of the putative class and Defendants, and, accepting Plaintiffs' allegations only for the purposes of this removal, the amount in controversy exceeds, in the aggregate, $5,000,000, exclusive of interests and costs. Removal therefore is proper pursuant to 28 U.S.C. §§ 1446 and 1453.[2]

#### A. Diversity Of Citizenship Exists.

13. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

14. Here, all requirements are met because Plaintiffs are citizens of California and BSL is a citizen of Delaware and/or Utah, but is not a citizen of California. Thus, minimal diversity exists and removal is proper.

///

---

[2] Defendants do not concede and reserves the right to contest, at the appropriate time, Plaintiffs' allegations that this action can properly proceed as a class action. Defendants further do not concede the merits of any of Plaintiffs' allegations or that they constitute a cause of action under applicable California law.

### 1.  Plaintiffs Are Citizens of California.

15. Plaintiffs are, and were at the time they filed the Complaint, citizens of the State of California. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019.

16. The Complaint alleges that "Plaintiff Carlos Jimenez is a resident of San Bernardino, in San Bernardino County, California." *See* Compl. ¶ 4. It also alleges that "Plaintiff Juan Pinzon is a resident of Bloomington, in San Bernardino County, California." *See* Compl. ¶ 5. The Complaint does not allege that Plaintiff Jimenez is a citizen of any other state. The Complaint also does not allege that Plaintiff Pinzon is a citizen of any other state. Plaintiffs Jimenez and Pinzon, therefore, each is a citizen of California for purposes of removal.

### 2.  BSL and Roofline Are Not Citizens Of California.

17. BSL is, and was at the time of the institution of this civil action, a corporation formed under the laws of the State of Delaware with its headquarters and principal place of business in the State of Utah.

18. Roofline is, and was at the time of the institution of this civil action, a corporation formed under the laws of the State of Oregon with its headquarters and principal place of business in the State of Oregon.

19. For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)). In *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the Supreme Court held that a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" (*i.e.*, the "nerve center" of the business). *Id.* at 92-93.

The Court further described the principal place of business as "the place where the corporation maintains its headquarters." *Id.* at 93.

20. BSL's principal place of business is Utah because, under *Friend*, 559 U.S. at 93, its "nerve center" is located in Salt Lake City, Utah. BSL's executive team members are based in the corporate offices in Salt Lake City, Utah, where they exercise day-to-day control of the business and perform the vast majority of their executive and administrative functions. The majority of BSL's core executive functions, administrative functions, corporate books, and records are in Salt Lake City, Utah. Therefore, BSL is a citizen of the State of Utah under the "nerve center" test and a citizen of Delaware based on its state of incorporation.

21. Likewise, Roofline's principal place of business is Oregon because, under *Friend*, 559 U.S. at 93, its "nerve center" is located in Eugene, Oregon. Roofline's executive team members are based in the corporate offices in Eugene, Oregon, where they exercise day-to-day control of the business and perform the vast majority of their executive and administrative functions. The majority of Roofline's core executive functions, administrative functions, corporate books, and records are in Eugene, Oregon. *Id.* Therefore, Roofline is a citizen of the State of Oregon under the "nerve center" test and based on its state of incorporation.

22. Although Plaintiffs have listed ten fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

23. Therefore, because Plaintiffs and BSL and Roofline are not residents of the same state, diversity of citizenship exists. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**B.     The Proposed Class Membership is Sufficiently Large.**

24. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members.

25. In the alleged Class Plaintiffs seek to represent all "all persons who worked for

Defendants as non-exempt, hourly paid employees in California, at any time from June 29, 2021, until the date of trial." *See* Compl. ¶ 44. According to business records, Defendants are informed and believe that they employed at least 829 non-exempt employees in California during the period from June 29, 2021 to the present. Defendants are further informed and believe from available data that at least 402 of these individuals separated from Defendants in the three years preceding the filing of the complaint. Thus, the putative class contains more than 100 members.

### C. The Amount In Controversy Exceeds $5,000,000.

26. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiffs do not expressly plead a specific amount of class damages, Defendants need to show it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Defendants' burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

27. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts

"first look to the complaint in determining the amount in controversy").

28. Under *Dart*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[A] removing defendant's notice of removal *need not* contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)).  Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id*. at *3.  As detailed below, Defendants plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiffs' allegations, and that the Court has jurisdiction pursuant to CAFA.  Here, the aggregated claims of the putative class members put into controversy over $5 million in potential damages.  28 U.S.C. § 1332(d)(2).

29. As explained above, Plaintiffs seek to represent a putative Class of more than 800 members.  Based on the allegations in the Complaint, Plaintiffs have put more than $5 million in controversy as set forth below, and CAFA removal is appropriate.[3]

**1. Plaintiffs' Fourth Cause of Action for Rest Period Violations Places at Least $3,550,520 in Controversy.**

30. Plaintiffs allege that Defendants "maintained and implemented a company-wide on-premises rest period policy, which effectively required Plaintiff and/or class members to remain on the premises during their rest periods." Compl. ¶ 87.  Plaintiffs also allege that "[t]hus,

---

[3] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' Complaint.  Defendants' references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Defendants maintain that each of Plaintiffs' claims is without merit and that Defendants are not liable to Plaintiffs or any putative class member.  In addition, Defendants deny that liability or damages can be established on a class wide basis.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

Defendants effectively maintained control over Plaintiffs and class members during rest periods." *Id.* According to Defendants' records, non-exempt employees in California (who are generally full-time employees) worked more than 37,000 workweeks during the period from June 29, 2021 to the present. Because Plaintiffs allege that Defendants required on-premises rest periods, Plaintiffs' allegations, if true, would mean that Defendants failed to provide any complaint rest periods. Even using a conservative estimate of 4 rest period violations per week, and applying the average hourly rate of $23.99 for current and former non-exempt employees in California, the total rest period penalties at issue are at least **$3,550,520** ($23.99 per hour x 37,000 workweeks x 4 violations per workweek = $3,550,520).

### 2. Plaintiffs' Seventh Cause of Action Seeking Waiting Time Penalties Places at Least $2,152,468.80 in Controversy.

31.     Plaintiffs allege that Defendants willfully failed to pay the putative class all allegedly earned and unpaid wages at the time of discharge or within 72 hours of leaving Defendants' employ. Compl. ¶¶ 109-110. Labor Code § 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Plaintiffs allege that "Defendants willfully failed to pay Plaintiffs and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages; minimum wages; meal, rest, and recovery period premiums; and/or sick leave pay, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." Compl. ¶ 109. According to Defendants' records, the employment of at least 413 putative class members terminated more than 30 days ago and within the three years preceding the filing of Plaintiffs' complaint. Plaintiffs allege that all putative class members whose employment ended at least 30 days ago are entitled to 30 days of waiting time penalties. *See* Compl. ¶ 110 (alleging non payment of wages to Plaintiffs and Class Members and that they are "entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code

section 203"). Based on Plaintiffs' allegations of failure to pay current and former hourly employees their full wages at the time of discharge, Defendants may reasonably assume "that each terminated putative class member was entitled to 30 days of continuation wages at 8 hours of standard pay per day." *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015); *see also Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties). Applying the average hourly rate for former putative class members of $22.31 per hour to all putative class members, and further conservatively assuming that all class members worked shifts of six hours, the total waiting time penalties at issue is at least **$2,152,468.80** ($22.31 per hour x 8 hours per day x 30 days x 402 former non-exempt employees = $2,152,468.80).

**3.    The Complaint Also Seeks Recovery Of Attorneys' Fees That Courts May Consider for Determining the Amount in Controversy.**

32.    Plaintiffs seek to recover attorneys' fees under various provisions of the Labor Code, including section 226. (Prayer for Relief, ¶ 41). Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson*, 2020 WL 7779015, at *4.

33.    Although Defendants deny Plaintiffs' claim for attorneys' fees, inclusion of attorneys' fees for purposes of removal by calculating 25% of the amount in controversy in this case, as detailed above, adds at minimum another $1,425,747.20 in controversy (25% of $5,702.988.80), bringing the total amount in controversy to at least **$7,128,736**.

34.    Again, this excludes the amount placed in controversy by for Plaintiffs' nine other

1. causes of action.

2. 35. Therefore, although Defendants have plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

## IV. VENUE

36. This action was originally filed in Sacramento County Superior Court. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V. NOTICE

37. Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

38. Based on the foregoing, Defendants respectfully request that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: March 2, 2023

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Carrie A. Gonell
Carrie A. Gonell
Samuel S. Sadeghi
Mayra Negrete
Attorneys for Defendants
ROOFLINE, INC., SRS DISTRIBUTION INC., J.B. WHOLESALE ROOFING AND BUILDING SUPPLIES, INC., BUILDERS SUPPLY LOGISTICS, INC.